IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN WAGNER, | : | CIVIL ACTION NO.: 02-cv-4713 |
| *Plaintiff*, | : | |
| vs. | : | |
| BRISTOL TOWNSHIP, | : | |
| *Defendant*. | : | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**I.   PARTIES:**

1.   Plaintiff, Kevin Wagner ("Wagner"), is an adult individual and citizen of the Commonwealth of Pennsylvania who resides at 16 Gun Road, Levittown, Pennsylvania.

2.   Defendant, Bristol Township ("Township"), is a municipal corporation duly organized, existing, founded, and chartered under the laws of the Commonwealth of Pennsylvania. At all times material hereto, Defendant Township has maintained its executive offices at 2501 Bath Road, Bristol, Pennsylvania.

3.   At all times material herein, Defendant Township was a "person" within the meaning of §1983, and as such, is liable to Wagner for the promulgation, adoption, implementation, enforcement and/or execution by its official lawmakers, the Council, of one or more policies, rules, regulations, resolutions, decisions and customs which caused the deprivation of Wagner's constitutional rights.

4.   At all times material, Defendant Township's Council members acted individually,

collectively and/or in concert as co-conspirators in causing a deprivation of Wagner's First and Fourteenth Amendment rights.

## II. JURISDICTION AND VENUE:

5. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983. Wagner also invokes the jurisdiction of this Court under 28 U.S.C. §1343(3), (4), in that he is suing to redress deprivations, under color of state law, of rights, privileges or immunities secured by the Constitution of the United States and §1983, and is seeking to recover damages and other relief pursuant to §1983.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b), in that the Defendant conducts business in this district and the events giving rise to Wagner's claims occurred in this district.

## III. FACTS GIVING RISE TO CLAIMS:

7. In or about 1991, Wagner was elected to the position of Constable for Defendant Township. Wagner was re-elected as Constable for Defendant Township in or about 1997 and has served in that capacity continuously from 1991 until the present time.

8. In or about December 2001, Wagner submitted an application with the Defendant Township for the position of Supervisor of the Public Works Department.

9. Soon thereafter, Wagner was interviewed for said position by Suzanne Newsome ("Newsome"), manager of Defendant Township and Steve McClain ("McClain"), Director of the Public Works Department.

10. On or about January 3, 2002, Wagner was offered and accepted the aforesaid Supervisor position.

11.     Wagner was employed as a Supervisor with Defendant Township from on or about January 3, 2002 until his position was unlawfully terminated as a result of the action taken by the Defendant Township on or about February 15, 2002.

12.     Wagner's job entailed supervisor functions which were non-policymaking and for which he was paid a salary of approximately $44,000 per annum. Wagner received lucrative employee benefits as well.

13.     At all times material herein, Wagner's job responsibilities as Supervisor included supervising the maintenance of 170 miles of roads, traffic safety, and recreation. Additionally, Wagner was responsible for overseeing a staff of approximately twenty-two (22) employees and approximately twenty-five (25) vehicles and pieces of equipment.

14.     Wagner performed his job function in a satisfactory, dutiful and competent manner.

15.     At all times material herein, Wagner, in his capacity as Supervisor, performed services and functions which were beneficial, important, and essential to the citizenry of Defendant Township.

16.     On or about January 7, 2002, a meeting of the newly elected members of the Defendant Township's Council was convened. The Council consisted of five (5) elected members, Karen Lipsack ("Lipsack"), John Monahan ("Monahan"), William Tuthill ("Tuthill"), Kenneth Worthington ("Worthington"), and Kenneth Balcom ("Balcom"), and one (1) Township Executive / Mayor, Samuel Fenton ("Fenton").

17.     At all relevant times, Tuthill was a Deputy Constable serving under Constable William Keyser ("Keyser"). It is believed and therefore averred that Wagner would not support

Constable Keyser's re-election and in the event Constable Keyser lost said election, Tuthill would lose his position of employment as Deputy Constable.

18.  During the January 7, 2002 meeting, Lipsack moved to re-open Defendant Township's budget which had been previously approved by the Council in or about December of 2001.

19.  Thereafter, Mayor Fenton met with Wagner and told him that Tuthill had unlawfully threatened to terminate Wagner from his position as Supervisor under the pretext of a job elimination unless he involuntarily resigned from his elected position of Constable and promised not to run for re-election in 2003. Wagner informed Mayor Fenton that he would not accede to Tuthill's unlawful demands notwithstanding the threats to terminate his employment.

20.  Mayor Fenton requested that Tuthill and the other Council members keep Wagner's Supervisor position in the budget. Furthermore, Newsome also requested that the Council abstain from making any budgetary cuts because the township offices were already overburdened with too much work due to increased Township services.

21.  Notwithstanding the above, on or about February 1, 2002, the Council unlawfully implemented and carried out a scheme, plan, and conspiracy to terminate Wagner from his job in retribution for his refusal to resign public office as an elected Constable. In furtherance of said illegal scheme, Tuthill unlawfully and with illegal motive, made a motion to re-open the budget and eliminate the position of Supervisor of the Public Works Department, which was held by Wagner.

22.  Tuthill's motion was approved and ratified by the Council. Defendant

Township's new budget could not be approved until it was advertised and voted upon by the Council on or about February 15, 2002.

23. Following the February 1, 2002 meeting, Tuthill met with Deputy Donald Lorady ("Lorady") and Wagner's partner Constable John Cronon ("Cronon"). Tuthill told Lorady and Constable Cronon that Wagner refused to resign his position as Constable and refused to refrain from running for re-election in 2003. In an effort to facilitate and accomplish his avowed illegal purposes, Tuthill informed Lorady and Constable Cronon that if Wagner resigned his Constable position, he would personally ensure that Lorady would replace Wagner as Constable and that he would be appointed to the said position.

24. Thereafter, Tuthill also told Council members Worthington and Balcom of the threats he had posed to Wagner.

25. In point of fact, Tuthill has no authority to appoint any individual to the elected position of Constable. Such appointments can only be performed by the President Judge of Bucks County.

26. Moreover, following the meeting, on or about February 1, 2002, in the presence of Constable Cronon, Joseph Polio, and Ronald Jamieson, Tuthill reaffirmed his unlawful theat to remove Wagner from his position as Supervisor unless he acceded to his demand that he resign as Constable. Tuthill told Wagner that he had sufficient votes to remove him from his position as Supervisor in the event that he refused to comply with his unlawful demand and this would be effectuated by re-opening the budget which had been approved by prior council vote in December of 2001.

27. Tuthill again informed Wagner that Lipsack and Monahan were acting in

concert with him and were in agreement with Tuthill's threats to remove Wagner from his position as Supervisor unless he resigned as Constable and promised not to run for re-election in 2003. Wagner again refused to accede to Tuthill's illegal demands and threats.

28. On or about February 15, 2002, the Council convened and voted to approve the new budget. The new budget effectively disposed of the position of Supervisor of the Public Works Department, held by Wagner. The said vote by the Council was a sham and pretext in order to remove and terminate Wagner from his position as Supervisor in retribution for Wagner's refusal to resign as Constable.

29. On or about February 19, 2002, Mayor Fenton vetoed the newly approved budget, however said veto was ineffective in that the Mayor does not possess the power nor the authority to veto a budget approved by the Council.

### COUNT I - PLAINTIFF v. DEFENDANT TOWNSHIP
### (42 U.S.C. §1983)
### INFRINGEMENT OF FIRST AND FOURTEENTH AMENDMENT RIGHTS

30. Wagner incorporates by reference thereto, all of the allegations of paragraphs 1 through 29 above, as though same were set forth more fully and at length hereto.

31. Defendant Township's Council members, acting individually, collectively, and as co-conspirators, and under color of state law, eliminated and/or caused the termination of Wagner from his position as Supervisor as retribution for his holding public office as an elected Constable.

32. At all times material, Wagner's political activities as Constable were constitutionally protected as a form of freedom of expression and/or political association.

33. Wagner's protected activities relating to his political office as an elected Constable were a substantial and/or motivating factor in the Defendant's action, conduct, and/or decisions which eliminated and/or caused the elimination of his job.

34. By reason of the foregoing retributory action, conduct, and/or decisions, the Defendants, acting as aforesaid, violated Wagner's rights under the First and Fourteenth Amendments to the United States Constitution.

35. Defendant, acting as aforesaid, would not have eliminated and/or caused the elimination of Wagner's job if he had not exercised his Constitutional rights to hold public office as an elected Constable and had he involuntarily resigned as demanded by Tuthill.

36. Defendant is liable for the said retributory action, conduct, and/or decisions of the Council because the said action, conduct, and/or decisions implemented and/or executed one or more policies, procedures, rules, regulations, decisions, and/or customs officially adopted and promulgated by the Council.

37. As a proximate result of the Defendant's violations of Wagner's First and Fourteenth Amendment rights, Wagner has suffered, does suffer and will in the future suffer loss of employment, loss of earnings, loss of earning capacity, loss of seniority and loss of employment benefits, for which he is entitled to be compensated in damages.

38. As a further proximate result of the Defendant's violation of Wagner's First and Fourteenth Amendment rights, Wagner has suffered, does suffer and will in the future suffer mental anguish, emotional distress, embarrassment, humiliation, personal indignity and loss of life's pleasures, for which he is entitled to be compensated in damages.

39. As a further proximate result of the Defendant's violation of Wagner's First and

Fourteenth Amendment rights, Wagner has suffered, still suffers and will in the future suffer harm and damage to his reputation among his peers and colleagues and/or in the community at large, for which he is entitled to be compensated in damages.

**WHEREFORE**, Wagner respectfully prays that this Honorable Court enter appropriate orders and decrees:

(a) declaring that the Defendant violated Wagner's rights under the First and Fourteenth Amendments to the United States Constitution;

(b) reinstating Wagner to his rightful position of employment as Supervisor of the Public Works Department, with all rights, benefits, and emoluments;

(c) awarding Wagner monetary damages to compensate him for the violations by Defendant of his rights secured by the First and Fourteenth Amendments;

(d) awarding Wagner a reasonable attorney's fee and costs as the prevailing party; and

(e) granting Wagner whatever other and further relief that is just and appropriate under the circumstances.

LOVITZ & GOLD, P.C.

BY:_____
SIDNEY L. GOLD, ESQUIRE
I.D. NO.: 21374
KEVIN I. LOVITZ, ESQUIRE
I.D. NO: 70184
Eleven Penn Center - Suite 515
1835 Market Street
Philadelphia, PA 19103
(215) 569-1999
Attorneys for Plaintiff