IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN WAGNER, | : | CIVIL ACTION NO.: 02-cv-4713 |
| *Plaintiff*, | : | |
| vs. | : | |
| BRISTOL TOWNSHIP, | : | |
| *Defendant*. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Kevin Wagner, hereby submits this memorandum of law in opposition to Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, Defendant's Motion should be dismissed because Plaintiff has stated claim upon which relief may be granted.

**I.    COUNTERSTATEMENT OF FACTS**

In or about 1991, Plaintiff was elected to the position of Constable for Bristol Township. Plaintiff was re-elected to this position in or about 1997 and has served in that capacity continuously until the present time. (Amended Complaint, ¶7) (hereinafter "Am. Comp., ¶__"). In or about December of 2001, Plaintiff submitted an application with the Defendant for the position of Supervisor of the Public Works Department. (Am. Comp., ¶8). After interviewing with Suzanne Newsome ("Newsome") and Steve McClain ("McClain"), Plaintiff was offered and did accept the Supervisor position on or about January 3, 2002. (Am. Comp., ¶¶9, 10). Plaintiff continued to work as a Supervisor until on or about February 15, 2002, when his position was unlawfully terminated as a result of the action taken by the Defendant. (Am.

Comp., ¶11).

Plaintiff's Supervisor position was a non-policymaking position in which his responsibilities included: supervising maintenance of 170 miles of roads, traffic safety, recreation, as well as overseeing employees, vehicles and equipment. (Am. Comp., ¶¶12,13). On or about January 7, 2002, the Defendant Township held a meeting of the newly elected members of the Township Council (hereinafter the "Council"). The Council consisted of Karen Lipsack ("Lipsack"), John Monahan ("Monahan"), William Tuthill ("Tuthill"), Kenneth Worthington ("Worthington"), Kenneth Balcom ("Balcom") and Mayor Samuel Fenton ("Fenton"). (Am. Comp., ¶16).

Tuthill believed that Plaintiff would not support the re-election of Constable William Keyser ("Keyser"), and in the event that Keyser was not re-elected, Tuthill would lose his position as Deputy Constable. (Am. Comp., ¶17). During the January 7, 2002 meeting, Lipsack moved to reopen the budget which had already been previously approved by the Council in or about December 2001. (Am. Comp., ¶18). Shortly thereafter, Mayor Fenton met with Plaintiff and informed him that Tuthill had unlawfully threatened to terminate Plaintiff from his position as Supervisor unless Plaintiff agreed not to seek re-election. (Am. Comp., ¶19). Plaintiff refused to acquiesce to Tuthill's threats.

Although Mayor Fenton requested that the Council keep Plaintiff's Supervisor position in the budget, the Council unlawfully implemented and carried out a scheme, plan and conspiracy to terminate Plaintiff from his job in retaliation for his refusal to resign from public office as an elected Constable. (Am. Comp., ¶¶20, 21). In furtherance of this illegal scheme, Tuthill unlawfully and with illegal motive, made a motion to re-open the budget and eliminate Plaintiff's

Supervisor position. (Am. Comp., ¶21). The motion was approved and ratified by the Council and was scheduled for completion on or about February 15, 2002. (Am. Comp., ¶22).

Following the February 1, 2002 meeting, Tuthill met with Deputy Donald Lorady ("Lorady") and Constable John Cronon ("Cronon"). During this meeting, Tuthill informed Lorady that if Plaintiff resigned his Constable position, he would ensure that Lorady would be appointed to Plaintiff's position. Tuthill also told Council members Worthington and Balcom of the threats he had posed to Plaintiff. (Am. Comp., ¶¶23, 24). Tuthill has no authority to appoint any individual to the Constable position. (Am. Comp., ¶25).

On or about February 1, 2002, Tuthill reaffirmed his threat in the presence of Cronon, Joseph Polio, and Ronald Jamieson, to remove Plaintiff from his position as Supervisor unless he resigned as Constable. Tuthill informed Plaintiff that he had sufficient votes to remove his Supervisor position which would be effectuated by the re-opening of the budget. (Am. Comp., ¶26). Tuthill also informed Plaintiff that Lipsack and Monahan were in agreement with his threats. (Am. Comp., ¶27). Once again, Plaintiff refused to acquiesce to Tuthill's illegal demands and threats.

On or about February 15, 2002, the Council convened and approved the new budget. The new budget effectively disposed of Plaintiff's position as Supervisor. The Council's vote was a sham and was pretext in order to remove and terminate Plaintiff from his position as Supervisor, in retaliation for Plaintiff's refusal to resign as Constable. (Am. Comp., ¶28).

## II.     ARGUMENT

### A.     Legal Standard

In its determination for a motion to dismiss a complaint for failure to state a claim under

Fed.R.Civ.P. 12(b)(6), the Court must accept as true all facts alleged in the Complaint and any reasonable inferences that can be drawn therein. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). This standard is very lenient and requires that the Complaint be liberally construed in favor of the Plaintiff. See Sabree v. Houston, 2003 U.S. Dist. Lexis 1339, *4 (E.D. Pa. 2003). The Complaint cannot be dismissed unless the Plaintiff can prove no set of facts or allegations which justify relief. Crighton v. Schuylkill County, 882 F.Supp. 411, 414 (E.D. Pa. 1995).

The Federal Rules of Civil Procedure only require that the Plaintiff make a short and plain statement of the claims to show that the pleader is entitled to relief and give the Defendant notice of the Plaintiff's allegations. See Fed.R.Civ.P. 8(a)(2). The issue is not whether the Plaintiff will ultimately prevail on their claims, but, whether they are entitled to offer evidence to support the claims. City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 (3d Cir. 1998). Accordingly, Defendant's Motion to Dismiss should be denied in its entirety as the Plaintiff has sufficiently alleged a cause of action under the First and Fourteenth Amendments.

> **B.   Plaintiff has Sufficiently Alleged a Cause of Action for the Violation of his First and Fourteenth Amendment Rights.**
>
> **1.   Plaintiff's Right to Run for Political Office is Protected Activity Worthy of First Amendment Protection.**

Defendant improperly claims in its Motion to Dismiss that the Plaintiff has failed to set forth a claim under the First Amendment because there is no fundamental right to candidacy. However, simply because a right is not a "fundamental" one for purposes of equal protection does not mean it is not entitled to First Amendment protection. Clements v. Fashing, 457 U.S. 957, 975, fn. 2; 102 S.Ct. 2836, 2849, fn. 2. Additionally, in Johnson v. Cushing, 438 F. Supp.

4

608, 612-614 (D. Minn. 1980), the court stated that regardless of whether the right to run for office is "fundamental," it is no doubt a federal constitutional right protected under the First Amendment. Similarly, in DeStefano v. Wilson, 96 NJ. Super. 592, 233 A.2d 682 (1967), the court ruled that running for political office is a means of political expression protected by the First Amendment.

"The right to run for office lies at the very heart and core of what it means to live in a republic, and it is thus well settled that the First Amendment protects that right from governmental interference." Price v. Townsend, 631 F. Supp. 106 (W.D. Ark. 1986). In Mysinger v. Foley, 651 F. Supp. 328 (W.D. Ark. 1987), the court held that the plaintiff's expression of his intent to run for political office against his boss was recognized as protected political activity under the First Amendment. Similarly, in Simmons v. Stanton, 502 F. Supp. 932 (W.D. Mich. 1980), the district court held that the discharge of an employee for announcing either his intentions or his consideration of the possibility of running for public office against an incumbent of a public office constituted a violation of the plaintiff's First and Fourteenth Amendment rights.

Plaintiff's Amended Complaint alleges that he was terminated as retaliation for holding the elected position of Constable and for expressing an intent to run for re-election in the 2003 election. (Am. Comp., ¶¶19, 23). Defendant has attempted to misconstrue Plaintiff's argument, and has stated that Plaintiff's Amended Complaint should be dismissed because Plaintiff has failed to allege that he was terminated for supporting or affiliating with a particular political party. The United States Supreme Court has indicated that restraints on First Amendment interests of public employees are only permitted in very limited circumstances. In Pickering v.

Board of Education, 391 U.S. 563, 88 S.Ct. 1731 (1968), the Court established a "balancing" test that calls for weighing of the right of the public employee to freely express opinions and associate in matters of public concern with the competing interests of the state, as an employer, in maintaining and promoting the efficiency of the public services it performs through its employees.

In Simmons v. Stanton, the court applied the Pickering balancing test and evaluated whether the plaintiff directed any criticism either publicly or privately against his Supervisor in exploring the possibilities of running for elective office against him, whether plaintiff's expression of his interest in running for political office had created any discipline problems or lack of harmony among his coworkers, and whether plaintiff's run for election jeopardized his functioning in his current position or harmed the office in its orderly operation. 502 F. Supp. 932, 937 (W.D. Mich. 1980).

In the case at hand, the Plaintiff never publicly criticized Constable Keyser or Deputy Constable Tuthill. In fact, the Plaintiff planned to support the re-election of Constable Keyser, contrary to the beliefs of Tuthill. Furthermore, it was generally known among Plaintiff's coworkers and supervisors that he indeed planned to run for re-election as Constable in 2003 and that his run for re-election would not cause any disruption in the office. Accordingly, in balancing the competing claims of First Amendment protection of the Plaintiff's right to run for re-election as Constable, against the competing interests of Defendant Township, as an employer, in promoting the efficiency of the public services it performs through its employees, under the Pickering test, the Court should find that the Defendant acted wrongfully in violation of the Plaintiff's First and Fourteenth Amendment rights in terminating his position of employment.

Furthermore, there exists no adverse harm to the interests of Defendant Township such that the Plaintiff should not have been compelled to relinquish his First Amendment rights as a condition to his continued employment with the Defendant Township. Ergo, the Court should deny the Defendant's Motion to Dismiss.

### 2. Plaintiff has Identified a Challenged Custom or Policy of the Defendant Township.

In its Motion to Dismiss, the Defendant Township erroneously contends that Plaintiff's Amended Complaint fails to clearly identify a challenged custom or policy of the Defendant Township, thus Plaintiff's First and Fourteenth Amendment claims must fail. To the contrary, Plaintiff's Amended Complaint clearly sets forth the challenged custom and policy in question such that Defendant's motion to dismiss must be denied.

A municipality may be held liable if an action taken pursuant to a municipal policy or custom caused a constitutional violation. Monell v. Dep't. of Social Services, 436 U.S. 658, 691 (1978). It is in the execution of the policy or custom that the municipality becomes liable, not solely on their employer status. Id. at 694. One single decision adopted and promulgated by the officers of a municipality can constitute an act of official government. Langford v. City of Atlantic City, 235 F.3d 845, 847-48 (3d Cir. 2000). Moreover, in Brown v. Muhlenberg Township, the court stated that a municipality can be sued if the plaintiff alleges it caused a constitutional violation by means of a "policy, statement, ordinance, or a decision that is officially adopted and promulgated by that body's officers." 269 F.3d 205, 214 (3d. Cir. 2001).

In the instant case, Paragraph 21 of Plaintiff's Amended Complainant clearly articulates that the Council unlawfully implemented a policy and scheme to terminate Plaintiff from his

position as Supervisor in retaliation for his refusal to resign as Constable and his opposition to Tuthill's re-election. Paragraphs 27 and 28 of Plaintiff's Amended Complaint further allege that the members of the Council were aware of this unlawful scheme when they approved Tuthill's motion to reopen the budget and remove Plaintiff from his Supervisor position. Not only were the members of the Council aware of the unlawful scheme, they approved and ratified the motion and subsequently voted to approve the new budget. The implementation and execution of this scheme caused a violation of Plaintiff's First and Fourteenth Amendment rights.

Accordingly, the Defendant's motion to dismiss should be denied because Plaintiff has sufficiently identified and alleged that Defendant implemented and executed a policy that caused a violation of the Plaintiff's First and Fourteenth Amendment rights.

### 3. Plaintiff Has Sufficiently Asserted that the Council Possessed Final Policy-Making Authority for Defendant Township.

Defendant Township further contends that it cannot be held liable for violations of the Plaintiff's First and Fourteenth Amendment rights because the Council did not possess final policy-making authority for Defendant Township. The Defendant improperly asserts that even if Tuthill, Monahan, and Lipsack intended to discriminate against the Plaintiff, their intent cannot be imputed to Defendant Township because they did not constitute a majority of the Council. Although Mayor Fenton is a member of the Council, only the elected Council members (Lipsack, Monahan, Worthington, Balcom, and Tuthill) voted on February 15, 2002 to approve the budget. Lipsack, Monahan, and Tuthill voted in favor of the new budget, while Worthington and Balcom opposed the new budget. As such, municipal liability should be imputed to Defendant Township because a majority of the voting Council members voted with the evil motive to discriminate

against the Plaintiff.

Furthermore, courts have gone beyond the decisions in Mason v. Village of El Portal, 240 F.3d 1337 (11th Cir. 2001), and Gupta v. The Town of Brighton, 9 F. Supp.2d 242, 245 (W.D. N.Y. 1998), which require that a majority of council members share the illegal motive, and have found that municipal liability may be imputed to a township when two out of four members of the city commission voted based upon a discriminatory motive. United States v. City of Birmingham, 538 F. Supp. 819, 826-29 (E.D. Mich. 1982), aff'd, 727 F.2d 560 (6th Cir. 1984).

It must also be noted that Paragraph 29 of Plaintiff's Amended Complaint clearly states that "Mayor Fenton vetoed the newly approved budget, however said veto was ineffective in that the Mayor does not possess the power nor the authority to veto a budget approved by the Council." As such, contrary to the Defendant's contentions, it is apparent from the face of Plaintiff's Amended Complaint that the Mayor possessed no authority with regard to approving the budget. Accordingly, the Defendant's argument that Plaintiff's Amended Complaint fails to establish that the Council possessed final policy-making authority in the area of the budget is without merit and the Court should deny the Defendant's Motion to Dismiss.

**4.      Plaintiff Need Not Assert a Property Interest to Set Forth a Claim Under the First and Fourteenth Amendments.**

The Defendant has misconstrued the allegations of Plaintiff's Amended Complaint. In its Motion to Dismiss, Defendant argued that Plaintiff failed to allege that he had a property interest in his position of employment. Plaintiff has not alleged that Defendant violated his procedural due process, but rather a First Amendment claim. Count I of Plaintiff's Amended Complaint includes a violation of the Fourteenth Amendment because it is well settled that the Fourteenth

Amendment incorporates the First Amendment and is applicable to the States. The Holy Name Society v. Horn, 2001 U.S. Dist. Lexis 12756, *21 (E.D. Pa.).

Unlike procedural due process claims under the Fourteenth Amendment, First Amendment claims do not require the Plaintiff to maintain a property interest in his employment. Robb v. City of Philadelphia, 733 F.2d 286, 294 (3d. Cir. 1984); Downey v. The Coalition Against Rape and Abuse, Inc., 143 F. Supp.2d 423, 444 (D. N.J. 2001). Hence, as Plaintiff's Amended Complaint does not allege that Defendant violated his procedural due process, Defendant's Motion to Dismiss must be denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss should be denied in its entirety.

                    LOVITZ & GOLD, P.C.

                    BY:_____
                        SIDNEY L. GOLD, ESQUIRE
                        I.D. NO.: 21374
                        KEVIN I. LOVITZ, ESQUIRE
                        I.D. NO: 70184
                        Eleven Penn Center - Suite 515
                        1835 Market Street
                        Philadelphia, PA 19103
                        (215) 569-1999
                        Attorneys for Plaintiff