**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN WAGNER, | : | **CIVIL ACTION NO.: 02-cv-4713** |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| vs. | : | |
| | : | |
| BRISTOL TOWNSHIP, | : | |
| | : | |
| *Defendant*. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION:**

Presently pending before this Court is Defendant Bristol Township's Motion for Summary Judgment seeking to dismiss the Civil Action filed by Plaintiff, Kevin Wagner, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  For the reasons set forth herein below, the Court should deny Defendant's Motion for Summary Judgment.

**II.    COUNTER STATEMENT OF FACTS:**

In or about 1991, Plaintiff, Kevin Wagner ("Wagner") was elected to the position of Constable for Bristol Township.  See Deposition of Kevin Wagner, p. 5, attached hereto and marked as Exhibit "A."  ("Wagner Dep.").  Wagner was re-elected to this position in 1997 and has served in that capacity continuously until the present time. (Wagner Dep., p. 5-6).  In or about December of 2001, Wagner submitted an application with Defendant Bristol Township ("Defendant Township") for the position of Supervisor

of the Public Works Department.  (Wagner Dep., p. 18, 21).  After interviewing with

Suzanne Newsome ("Newsome") and Steve McClain ("McClain"), Wagner was offered

and did accept the Supervisor position on or about January 3, 2002.  (Wagner Dep., p. 24,

25).

In December of 2001, the Bristol Township Council ("Council") adopted a budget

for the year 2002.  See Deposition of William Tuthill, p. 4, attached hereto and marked as

Exhibit "B."  ("Tuthill Dep.").  Thereafter, on January 7, 2002, newly elected Council

members were sworn in, including, Karen Lipsack ("Lipsack"), John Monahan

("Monahan"), Kenneth Worthington ("Worthington"), and Kenneth Balcom ("Balcom").

See Minutes from January 7, 2002 Bristol Township meeting, attached hereto and marked

as Exhibit "C."  William Tuthill ("Tuthill"), the remaining Council member was a

member of the Council when the original 2002 budget was approved.  (Tuthill Dep., p. 4).

_____Immediately after being sworn in, Lipsack moved to reopen Defendant Township's

budget and further moved to freeze all hiring made prior to December 31, 2001.  (Exhibit

C).   This directly affected Wagner because his position was funded under the 2002

budget which was adopted in December of 2001.  Prior to this meeting, Lipsack discussed

said motion with both Monahan and Tuthill.  See Deposition of Karen Lipsack, p. 7,

attached hereto and marked as Exhibit "D."  ("Lipsack Dep.")  Lipsack, Monahan, and

Tuthill voted in favor of Lipsack's motion, while Balcom and Worthington voted no.

(Exhibit C).  The Council was divided into two separate political factions of the local

democratic party. Those who supported Constable William Keyser included Lipsack, Monahan, and Tuthill. Those council persons who supported Mayor Fenton included Worthington and Balcom. (Wagner Dep., p. 37, 63). Council members typically align their voting based upon their membership in the aforesaid political factions.

In or about January of 2002, Tuthill, in addition to serving as President of the Council, served as a Deputy Constable under Constable William Keyser ("Keyser"). (Tuthill Dep., p. 23). Tuthill believed that Wagner would not support the re-election of Constable Keyser, and in the event that Keyser was not re-elected, Tuthill would lose his position as Deputy Constable. (Wagner Dep., p. 37). See also Deposition of Kenneth Balcom, p. 13, attached hereto and marked as Exhibit "E." ("Balcom Dep.").

In January of 2002, shortly after Wagner assumed the position of Supervisor, Mayor Fenton met with Wagner and informed him that Tuthill had unlawfully threatened to eliminate budget funding for Wagner's Supervisor position unless Wagner agreed not to seek re-election as a Constable. (Wagner Dep., p. 35-36). Wagner told Fenton that he would not accede to Tuthill's unlawful threats.

On February 1, 2002, the Council reconvened to review the 2002 budget. During said meeting, Mayor Fenton stated that the original 2002 budget "was a good, well-organized budget with no tax increases and followed the recommendations of the Pennsylvania Department of Community and Economic Development Report." See Minutes from February 1, 2002 Bristol Township Meeting attached hereto and marked as

Exhibit "F."  Additionally during this meeting, Balcom made a motion to approve the 2002 budget as originally adopted.  (Exhibit F).  Balcom's motion failed by a vote of 3-2 as Lipsack, Monahan, and Tuthill all voted against said motion.  (Exhibit F).  Thereafter, Lipsack moved to eliminate funding for Wagner's Superintendent position.  (Exhibit F). Lipsack's motion was approved by a vote of 3-2; again, Lipsack, Monahan, and Tuthill all voted in favor of said motion.  (Exhibit F).  At the close of the February 1, 2002 Council meeting, Lipsack's motion to advertise and place the amended budget on public display was approved by a vote of 3-2 and was supported by Lipsack, Monahan, and Tuthill. (Exhibit F).

Immediately following said meeting,  Tuthill approached Donald Lorady ("Lorady") and John Cronon ("Cronon") and told them that if Wagner resigned his Constable position, he would ensure that Lorady would replace Wagner as Constable. See Deposition of John Cronon, p. 6-7, attached hereto and marked as Exhibit "G." ("Cronon Dep."); Deposition of Donald Lorady, p. 10. attached hereto and marked as Exhibit "H."  ("Lorady Dep.") (Lorady Dep., p. 11; Cronon Dep., p. 8).

On February 1, 2002, Tuthill told Wagner in the presence of  Cronon, Joseph Pollio ("Pollio"), and Ronald Jamieson ("Jamieson"), that he intended to eliminate the funding for Wagner's Supervisor position unless he resigned as Constable.  (Wagner Dep., p. 64-67).  Tuthill further informed Wagner that Lipsack and Monahan agreed to vote in favor of eliminating Wagner's Supervisor position from the Township's budget.

-4-

(Wagner Dep., p. 67).  Once again, Wagner refused to accede to Tuthill's illegal demands

that he resign as Constable and not run for re-election. (Wagner Dep., p. 67).

During the February 15, 2002 Council meeting, Lipsack moved to adopt the 2002

budget amendments, which included the removal of funding for Wagner's Supervisor

position.  See Minutes from February 15, 2002 Bristol Township Budget Meeting,

attached hereto and marked as Exhibit "I."  Lipsack, Monahan, and Tuthill voted in favor

of adopting the amendments, while Balcom voted against approval of the amendments.

(Exhibit I).   In addition to removing funding for Wagner's Supervisor position, the new

budget removed funding for the position of Police Liasion, then held by retired police

officer Joseph Fehn ("Fehn").  (Wagner Dep., p. 54-55).

On February 19, 2002, Mayor Fenton vetoed the newly approved budget, which

effectively returned the budget to its original form as of December of 2001.  (Lipsack

Dep., p. 15).  Curiously, the funding for Fehn's position was reinstated, thereby leaving

Wagner as the only employee affected by the new budget. Nevertheless, Wagner's

position was never funded and he was in effect removed as Supervisor,  (Tuthill Dep., p.

18-19).

## III.  **LEGAL STANDARD:**

Summary judgment is only appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(c).  An issue is genuine only if there is

sufficient evidentiary basis for which a reasonable jury could find for the non-moving

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In evaluating a

motion for summary judgment, all inferences must be drawn in favor of the non-moving

party.  United States v. Diebold, 369 U.S. 654 (1962).

     A party seeking summary judgment always bears the initial responsibility of

informing the Court of the basis for the motion and identifying those portions of the

record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  Drawing all reasonable

inferences in favor of Wagner, the facts clearly demonstrate that there is no basis for the

entry of summary judgment in favor of Defendant Township.

**IV.**    <u>**LEGAL ARGUMENT:**</u>

     Wagner has produced sufficient evidence to overcome summary judgment in that

the summary judgment record clearly establishes that Defendant Township, in eliminating

funding for Wagner's Supervisor position, did so in retribution for his refusal to step

down as Constable and not run for re-election.  Under the laws of the Third Circuit, as set

forth in the case of <u>Langford v. City of Atlantic City</u>, 235 F.3d 845 (3rd Cir. 2000), the

actions of Defendant Township violated Wagner's constitutional right to run for elected

office without retribution.  This was a violation of Wagner's First Amendment rights.

**A.     The Court Should Deny Defendant Township's Motion for Summary Judgment Because Wagner's Right to Run for Political Office is <u>Protected Activity Worthy of First Amendment Protection</u>.**

Wagner's right to run for and hold the elected position of Constable is protected activity and worthy of First Amendment protection.   In <u>Johnson v. Cushing</u>, 438 F. Supp. 608, 612-614 (D. Minn. 1980), the court stated that regardless of whether the right to run for public office is "fundamental," it is no doubt a federal constitutional right protected under the First Amendment.  Similarly, in <u>DeStefano v. Wilson</u>, 96 N.J. Super. 592, 233 A.2d 682 (1967), the court ruled that running for political office is a means of political expression that must be protected under the First Amendment.

"The right to run for office lies at the very heart and core of what it means to live in a republic, and it is thus well settled that the First Amendment protects that right from governmental interference." <u>Price v. Townsend</u>, 631 F. Supp. 106 (W.D. Ark. 1986). Similarly, in <u>Mysinger v. Foley</u>, 651 F. Supp. 328 (W.D. Ark. 1987), the court held that the plaintiff's expression of his intent to run for political office against his boss was recognized as protected political activity under the First Amendment.  Moreover, in <u>Simmons v. Stanton</u>, 502 F. Supp. 932 (W.D. Mich. 1980), the district court held that the discharge of an employee for announcing either his intentions or his consideration of the possibility of running for political office against an incumbent of a political office constituted a violation of the plaintiff's First and Fourteenth Amendment rights.

It is undisputed that Tuthill told Wagner that he could either remain in the position

of Constable or hold the position of Supervisor for Defendant Township, but not hold both positions simultaneously.  The summary judgment record is clear that the Council's action, in eliminating funding for Wagner's Supervisor position, was a ruse and nothing more than an attempt by Tuthill and his cronies to utilize the political process for personal and financial gain.  Tuthill, in threatening to eliminate funding for Wagner's Supervisor position unless Wagner resigned as Constable and pledged not to run for re-election, sought to solidify his own future prospects as a Deputy Constable, a position which is accompanied by a substantial yearly salary for Tuthill.    Tuthill's threats, and ultimately his action with the Council in eliminating funding for Wagner's Supervisor position in retribution for Wagner's holding and running for political office, violated Wagner's First Amendment freedoms such that the Court should deny the Defendant's Motion for Summary Judgment.

The United States Supreme Court has indicated that restraints on First Amendment interests of public employees are only permitted in very limited circumstances.  In Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731 (1968), the Court established a "balancing test" that calls for weighing of the right of the public employee to freely express opinions and associate in matters of public concern with the competing interests of the state, as an employer, in maintaining and promoting the efficiency of the public services it performs through its employees.

In Simmons v. Stanton, the court applied the Pickering balancing test and

evaluated whether the plaintiff directed any criticism either publicly or privately against his Supervisor in exploring the possibilities of running for elective office against him, whether plaintiff's expression of his interest in running for political office had created any discipline problems or lack of harmony among his coworkers, and whether plaintiff's run for election jeopardized his functioning in his current position or harmed the office in its orderly operation.  502 F. Supp. 932, 937 (W.D. Mich. 1980).

In the instant case, the record does not reveal that Wagner ever publicly criticized Constable Keyser or Deputy Constable Tuthill.  In fact, the record demonstrates that Wagner in fact planned to support the re-election of Constable Keyser, contrary to the beliefs of Tuthill.  (Wagner Dep., p. 40).  Furthermore, Defendant Township has supplied no evidence that Wagner's position of Constable or his run for re-election would have caused any disruption in the office whatsoever.  Accordingly, in balancing the competing claims of First Amendment protection of Wagner's right to run for re-election as Constable, against the competing interests of Defendant Township, as an employer, in promoting the efficiency of the public services it performs through its employees, under the Pickering test, the Court should find that the Defendant Township acted wrongfully in terminating Wagner in violation of his First and Fourteenth Amendment rights.

Furthermore, Defendant Township has not provided any evidence that it would suffer any adverse harm such that Wagner should not have been compelled to relinquish his First Amendment rights as a condition to his continued employment with the

-9-

Defendant Township. Ergo, the Court should deny the Defendant's Motion for Summary Judgment.

    **B.**     **Defendant Township's Actions, in Eliminating Funding for Wagner's Supervisor Position in Retribution for Wagner's holding Political Office and Running for Re-election, is Sufficient to Establish <u>Municipal Liability</u>.**

Defendant Township's actions, in eliminating funding for Wagner's Supervisor position in retribution for Wagner's holding political office and running for re-election as a Constable, is sufficient to establish municipal liability such that the Court should deny the Defendant's Motion for Summary Judgment.

A municipality may be held liable if an action taken pursuant to a municipal policy or custom caused a constitutional violation. <u>Monell v. Dep't. of Social Services</u>, 436 U.S. 658, 691 (1978). It is in the execution of the policy or custom that the municipality becomes liable, not solely on their employer status. <u>Id</u>. at 694. One single decision adopted and promulgated by the officers of a municipality can constitute an act of official government. <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847-48 (3rd Cir. 2000). Moreover, in <u>Brown v. Muhlenberg Township</u>, the Third Circuit established that a municipality can be sued if the plaintiff alleges it caused a constitutional violation by means of a "policy, statement, ordinance, or a decision that is officially adopted and promulgated by that body's officers." 269 F.3d 205, 214 (3rd Cir. 2001).

In <u>Langford v. City of Atlantic City</u>, the Third Circuit was asked to decide whether plaintiffs Langford and Marsh could state a cause of action for violations of their

constitutional rights by the City of Atlantic City.  In <u>Langford</u>, the city council voted to eliminate the plaintiffs' jobs as part of a budget reduction plan.  235 F.3d 845, 846 (3rd Cir. 2000).  The plaintiffs alleged that their positions were eliminated in retribution for opposing the mayor in an election.  <u>Id</u>.  The plaintiffs claimed that the City deprived them of their First and Fourteenth Amendment rights when it eliminated and/or caused the elimination of plaintiffs' municipal positions in retaliation for plaintiffs' political activities.  <u>Id</u>. at 850.  The court ruled that "a municipality can be held liable for its unconstitutional acts in formulating and passing its annual budget."  <u>Id</u>. at 850.

Similarly, in the case at hand, Wagner asserts that the Council, when it reopened the 2002 budget and eliminated funding for Wagner's Supervisor position, did so with the intent of punishing Wagner for holding the elected position of Constable and for refusing to pledge that he would not run for re-election in 2003.  The Council's actions were unconstitutional and plainly in retribution for Wagner's having engaged in activity protected under the First Amendment to the United States Constitution.  Thus, as the Third Circuit held the City of Atlantic City liable in <u>Langford</u> for amending its budget with an underlying improper and unconstitutional motive, so too should this Court find that Defendant Township is liable for causing the elimination of funding for Wagner's Supervisor position.  Accordingly, the Court should deny the Defendant Township's Motion for Summary Judgment and allow Wagner the opportunity for a jury to hear the facts of the case.

### C.     The Reasons Articulated by Defendant Township for Eliminating Funding for Wagner's Supervisor Position were Pretextual.

In its Motion for Summary Judgment, Defendant Township asserted that the

decision to re-open the 2002 budget and eliminate funding for Wagner's Supervisor position was made for budgetary reasons. Wagner contends that this stated reason was pretextual and that the decision was made solely in retribution for Wagner's refusal to resign as Constable and refusal to agree not to run for re-election in 2003.

The summary judgment record reveals that the 2002 budget that was approved in December of 2001 had allocated approximately $285,000 for three Township jobs, including Wagner's Supervisor position. (Tuthill Dep., p. 63). The summary judgment record further reveals that Defendant Township expected to collect approximately $145,000 in revenues from an occupational privilege tax as well as an additional $130,000 in revenues from the per capita tax. (Tuthill Dep., p. 66). Tuthill testified during his deposition that the funding for Wagner's position was to be allocated from the general fund and was in fact available at the time the new budget was approved by Council. (Tuthill Dep., p. 68). Thus, it is clear from the record that Defendant's contention that there was insufficient funding for Wagner's position is disingenuous and entirely inaccurate.

Tuthill additionally attempted to misconstrue the law in stating that he believed it was illegal for Wagner to hold the position of Constable and simultaneously hold a paid position with Defendant Township. (Tuthill Dep., p. 7). Tuthill stated that he told Wagner to resign as Constable based upon his understanding of the law. (Tuthill Dep., p. 7). However, during his deposition, Tuthill was unable to point to any law that stood for said premise and admitted that his prior understanding of the law was inaccurate. (Tuthill Dep., p. 9). Significantly, following the elimination of funding for Wagner's position,

Kenneth Johnson from the Center of Local Government and Services in Harrisburg,

Pennsylvania informed Defendant Township that an elected Constable can indeed work

for the Township while in elected office.  (Tuthill Dep., p. 11).

## V.    <u>CONCLUSION</u>:

For all the foregoing reasons, the Plaintiff respectfully requests that this Honorable

Court rule in the Plaintiff's favor and deny Defendant's Motion for Summary Judgment.


Respectfully submitted,


SIDNEY L. GOLD & ASSOCIATES, P.C.

By:_____
SIDNEY L. GOLD, ESQUIRE
I.D. No.: 21374
TRACI M. GREENBERG, ESQUIRE
I.D. No.: 86396
515 Eleven Penn Center
1835 Market Street
Philadelphia, PA 19103
(215) 569-1999
Attorneys for Plaintiff