IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN WAGNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRISTOL TOWNSHIP | : | No. 02-4713 |

## MEMORANDUM AND ORDER

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE                              September 18 , 2003

Presently before the Court is a Title 42 U.S.C. § 1983 action brought by Plaintiff Kevin Wagner ("Plaintiff"). Plaintiff claims that his constitutional and civil rights were violated by Defendant Bristol Township ("Defendant") when the Bristol Township Council ("Council") eliminated his employment in retaliation for his decision to run for elected office.

Defendant has filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on grounds that there are no material issues of fact in dispute, and that as a matter of law, it is entitled to judgment in its favor. Plaintiff has filed a response asserting that material issues of fact exist for jury determination. For the reasons set forth below, Defendant's Motion for Summary Judgment is denied.

## I. BACKGROUND[1]

In 1991, Plaintiff was elected to six (6) year term as a Pennsylvania State

---

[1] The following facts are based on the evidence of record viewed in the light most favorable to Plaintiff, the non-moving party, as required when considering a motion for summary judgment. Carnegie Mellon Univ. v. Schwartz, 105 F.3d 863, 865 (3d Cir. 1997).

Constable ("Constable") for Bristol Township. See Pl.'s Ex. A, at 5, 17. Plaintiff was re-elected to this position in 1997 and has served in that capacity continuously until the present time. See Pl.'s Ex. A, at 5-6, 17. Plaintiff is planning on running for re-election in 2003 after his current term ends. See Pl.'s Ex. A, at 17.

In December 2001, the Council adopted a budget for the year 2002, authorizing, among other things, the funding of the position of Supervisor of the Public Works Department ("Supervisor"). See Pl.'s Ex. B, at 4.

In December 2001, Plaintiff submitted an application with Defendant for the Supervisor position. See Pl.'s Ex. A, at 18-21. After interviewing with Suzanne Newsome ("Newsome") and Steve McClain ("McClain"), Plaintiff was offered and accepted the Supervisor position on January 2, 2002. See Pl.'s Ex. A, at 24-25; Def.'s Ex. J. Plaintiff was notified that he was to start working on January 8, 2002. See Def.'s Ex. J.

On January 7, 2002, four (4) newly-elected Council members were sworn in to the Township Council, including Karen Lipsack ("Lipsack"), John Monahan ("Monahan"), Kenneth Worthington ("Worthington"), and Kenneth Balcom ("Balcom"). See Pl.'s Ex. C. Balcom and Worthington had served on the Council in December 2001 when the budget for the year 2002 was approved. See Def.'s Ex. D, at 3-4. William Tuthill ("Tuthill"), a fifth (5th) Council member, had also been a member of the Council when the 2002 budget was approved. See Pl.'s Ex. B, at 4.

Immediately after being sworn in, Lipsack moved to reopen Defendant Township's 2002 budget and further moved to freeze all hiring made prior to December 31, 2001.[2] See Pl.'s Ex. C. Prior to this meeting, Lipsack discussed said motion with both Monahan and Tuthill. See Pl.'s Ex. D, at 7. The motion was approved by a vote of three (3) to two (2) with Lipsack, Monahan, and Tuthill voting in favor of Lipsack's motion, while Balcom and Worthington voted against the motion.[3] See Pl.'s Ex. C.

In January 2002, Tuthill, in addition to serving as President of the Council, served as a Deputy Constable under Constable William Keyser ("Keyser"). See Pl.'s Ex. B, at 23-24. Tuthill believed that Plaintiff would not support the re-election of Keyser as a Constable, and in the event that Keyser was not re-elected, Tuthill would lose his position as Deputy Constable. See Pl.'s Ex. A, at 37; see also Pl.'s Ex. E, at 13-14. In support thereof, Plaintiff contends that the Council was divided into two (2) separate political factions of the local Democratic Party. Those Council members who supported Keyser included Lipsack, Monahan, and Tuthill, while those who supported Bristol Township Mayor Fenton included Balcom and Worthington. See Pl.'s Ex. A, at 37, 63.

Shortly after Plaintiff assumed the position of Supervisor in January 2002, Mayor

---

[2] Pursuant to the Township's Administrative Code, "Council shall have the power to amend the budget during the month of January next following any municipal election, but final adoption of the amended budget shall be completed by February 15 of the same year." See Def.'s Supplemental Mem. of Law, Ex. 1, at § 5-35(B).

[3] This action directly impacted Plaintiff because, as previously noted, his position was funded under the 2002 budget which was adopted in December 2001.

Fenton met with Plaintiff and informed him that Tuthill had threatened to eliminate budget funding for Plaintiff's Supervisor position unless Plaintiff agreed not to seek re-election as a Constable.  See Pl.'s Ex. A, at 35-36.

On February 1, 2002, the Council reconvened to review the 2002 budget.  During that meeting, Mayor Fenton stated that the original 2002 budget "was a good, well-organized budget with no tax increases and followed the recommendations of the Pennsylvania Department of Community and Economic Development Report."  See Pl.'s Pl.'s Ex. F; Def.'s Ex. N. (emphasis in original).  In response thereto, Councilman Balcom moved to let the budget remain as originally approved.  See Pl.'s Ex. F; Def.'s Ex. N.  The motion was defeated by three (3) to two (2), with Balcom and Worthington voting in favor of the motion, and Monahan, Lipsack, and Tuthill voting against the motion.  See Pl.'s Ex. F; Def.'s Ex. N.  Councilwoman Lipsack then spoke regarding the economy noting that "[o]ther governments were cutting back," "there were too many unknown factors," and that "she did not want to see the Township in a deficit."  See Pl.'s Ex. F; Def.'s Ex. N.  Lipsack moved to eliminate Plaintiff's Superintendent position, as well as positions which included an assistant in the Executive's Budget, Human Resources Director, Assistant Finance Officer, and Administrative Liaison in the Police Department.  See Pl.'s Ex. F; Def.'s Ex. N.  Each motion, except that to remove the Assistant Finance Officer position, was approved by a vote of three (3) to two (2), with Lipsack, Monahan, and Tuthill all consistently voting in favor of the motions.  See Pl.'s

Ex. F; Def.'s Ex. N. Finally, a motion was made and approved to advertise and place the amended budget on display. See Pl.'s Ex. F; Def.'s Ex. N.

Immediately following the meeting, Tuthill approached Donald Lorady ("Lorady") and told him in the presence of John Cronon ("Cronon") that if Plaintiff resigned his constable position, Tuthill would ensure that Lorady would replace Plaintiff as Constable. See Pl.'s Ex. G, at 6-8; Pl.'s Ex. H, at 10-11. Tuthill also indicated that he had arranged the deal with Council members Lipsack and Monahan. See Pl.'s Ex. G, at 8-9. Tuthill then encountered Plaintiff, and in the presence of Cronon, Joseph Pollio ("Pollio"), and Ronald Jamieson ("Jamieson"), told him that he intended to eliminate the funding for Plaintiff's supervisor position unless Plaintiff resigned as Constable. See Pl.'s Ex. A, at 63-67. Tuthill further informed Plaintiff that Lipsack and Monahan agreed to vote in favor of eliminating Plaintiff's supervisor position from the Township's budget. See Pl.'s Ex. A, at 67; Pl.'s Ex. G, at 9-10. Plaintiff refused to accede to Plaintiff's demands that he resign as Constable and not run for re-election. See Pl.'s Ex. A, at 67.

During the February 15, 2002, Council meeting, Lipsack moved to adopt the 2002 budget amendments which included the elimination of Plaintiff's Supervisor position. See Pl.'s Ex. I. Lipsack, Monahan, and Tuthill voted in favor of adopting the amendments, while Balcom voted against approval of the amendments. See Pl.'s Ex. I.

Plaintiff filed a complaint in this court and was subsequently granted leave to amend that complaint. Plaintiff asserts that Defendant Township's Council members

5

violated his First and Fourteenth Amendment rights by eliminating and/or causing the termination of his position as Supervisor in retribution for his decision to seek re-election as an elected public official.[4]

## II. STANDARD OF REVIEW

A reviewing court may enter summary judgment where there are no genuine issues as to any material fact and one party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The evidence presented must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In deciding the motion for summary judgment, it is not the function of the Court to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. Id. at 248-49.

The moving party has the initial burden of identifying evidence which it believes shows an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). The moving party's burden may be discharged by demonstrating that there is an absence of evidence

---

[4]"The Supreme Court has long held that the Fourteenth Amendment makes the First Amendment applicable to the states." Carver v. Dennis, 104 F.3d 847, 849 (6th Cir. 1997) (citing Gitlow v. New York, 268 U.S. 652, 666 (1925)).

to support the nonmoving party's case.  Celotex, 477 U.S. at 325.  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings and designate specific facts, by use of affidavits, depositions, admissions, or answers to interrogatories, showing that there is a genuine issue for trial.  Id. at 324.  Moreover, when the nonmoving party bears the burden of proof, it must "make a showing sufficient to establish the existence of [every] element essential to that party's case." Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141, 144 (3d Cir. 1987) (quoting Celotex, 477 U.S. at 322).  Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

### III. DISCUSSION

Plaintiff brought this action pursuant to Title 42 U.S.C. § 1983.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  There is no dispute as to whether state actors were allegedly involved, so for purposes of this Motion, I will assume that Defendant acted under color of state

law.

### A.  MUNICIPAL LIABILITY

In <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 690 (1978), the United States Supreme Court held that "a municipality can be held liable as a person under [§] 1983 when it unconstitutionally implements or enforces 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the officers of that municipality." <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000) (quoting <u>Monell</u>, <u>supra</u>).  In furtherance thereof, the Third Circuit has held that a municipality may be subject to § 1983 liability for "its unconstitutional acts in formulating and passing its annual budget." <u>Id.</u> at 850.

Plaintiff argues that the elimination of his Supervisor position from the Township's budget was in retaliation for Plaintiff having engaged in a constitutionally protected activity.  First, we must determine whether Plaintiff's decision to run for re-election is a constitutionally protected activity.

The United States Supreme Court has never held that an individual's right to run for political office is a "fundamental right." <u>See</u> <u>Bullock v. Carter</u>, 405 U.S. 134, 142-43 (1972) (stating that the Court "has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review" when reviewing the primary election filing fee system used by the State of Texas).  Nevertheless, the government may not deny a public benefit (such as employment) on a basis that infringes upon a person's

constitutionally protected interests.  Perry v. Sinderman, 408 U.S. 593, 597 (1972).  A court facing a challenge to government action allegedly infringing on a public employee's First Amendment rights must engage in a two- (2-) step analysis, determining first whether the speech at issue addresses a matter of public concern and, if so, deciding the proper balance between the employee's constitutional rights and the State's interest as an employer in promoting efficient provision of public services.  Deemer v. Durell, 110 F.Supp.2d 1177, 1180 (S.D. Iowa 1999), aff'd, 230 F.3d 1362 (2000) (citing Pickering v. Board of Education, 391 U.S. 563, 568 (1968)).

We conclude that the very act of running for office addresses matters of public concern.  See, e.g., Click v. Copeland, 970 F.2d 106, 112 (5th Cir. 1992); Deemer, 110 F.Supp.2d at 1182 (finding that candidacy was speech of public concern).  See generally Newcomb v. Brennan, 558 F.2d 825, 828-29 (7th Cir.), cert. denied, 434 U.S. 968 (1977) (disciplinary action discouraging a candidate's bid for elective office "represent[ed] punishment by the state based on the content of a communicative act" protected by the First Amendment); Becton v. Thomas, 48 F.Supp.2d 747, 757 (W.D. Tenn. 1999) (finding the First Amendment affords some protection to an individual's right to seek public office).  However, we must next determine the proper balance between Plaintiff's constitutional rights and Defendant's interest as an employer in promoting efficient provision of public services.  See Pickering, 391 U.S. at 568.  This balancing test requires full consideration of the government's interest in the effective and efficient fulfillment of

its responsibilities to the public. Connick v. Myers, 461 U.S. 138, 150-54 (1983). In the instant case, the record does not reveal that Plaintiff ever publicly criticized Constable Keyser or Deputy Constable Tuthill.[5] Moreover, Defendant has supplied no evidence that Plaintiff's position as Constable or his run for re-election would have caused any disruption in the office. Indeed, Defendant has not provided any evidence that it would suffer any harm if Plaintiff were to have continued his employment as a Supervisor of Public Works while running for re-election. As such, we find that there are no countervailing interests which would impede Plaintiff's performance of his duties as a Supervisor of Public Works and outweigh Plaintiff's right to run for office.

Next, in order to establish municipal liability, Plaintiff must demonstrate that there is a material issue of fact as to whether his running for office was a substantial or motivating factor in the Council's decision to eliminate his position. On its face, the amendment of the 2002 budget is benign, that is, there is no indication in the minutes of Council's meetings that the budget amendments were adopted as a result of, and in retaliation for, Plaintiff's decision to run for re-election. Scott-Harris v. City of Fall River, 134 F.3d 427, 436 (1st Cir. 1997), rev'd on other grounds, 523 U.S. 44 (1998)[6]; see also McHugh v. Bd. of Educ. of the Milford School Dt., 100 F.Supp.2d 231, 241 (D.Del.

---

[5]In fact, the record demonstrates that Plaintiff in fact plans to support the re-election of Constable Keyser, contrary to the beliefs of Tuthill. See Pl.'s Ex. A, at 40.

[6]The Supreme Court reversed on the grounds of legislative immunity. See Bogan v. Scott-Harris, supra.

2000). "In cases like this one, implicating the exercise of First Amendment rights, liability under § 1983 can attach to the passage of a facially benign law only if one peers beneath the textual facade and concludes that the legislative body acted out of a constitutionally impermissible motive." Scott-Harris, 134 F.3d at 436.

Generally, a plaintiff trying to impute an improper motive from a government official to the Council itself must show that a majority of the applicable Council members knew of the plan and approved it; a minority of the Council members is insufficient to graft the motive onto the Council. Holt Cargo Systems, Inc. v. Delaware Valley Port Authority, 20 F.Supp.2d 803 (E.D. Pa. 1998), aff'd, 165 F.3d 242 (3d Cir. 1999) (citing Scott-Harris, 134 F.3d at 438). However, the inquiry as to the individual Board member's motives is fact intensive. In this case, a majority of the Board – Tuthill, Lipsack, and Monahan – voted to amend the Township budget and eliminate Plaintiff's position as a Supervisor. The record viewed in the light most favorable to the Plaintiff leads to the conclusion that the Council president, Tuthill, acted on an impermissible motive in voting to approve the elimination of the Supervisor position. Moreover, the evidence that Tuthill convinced Lipsack and Monahan to move for, and adopt the budget amendments, when Plaintiff refused to step down from a re-election bid, is such that a reasonable jury could find that a majority of the Board was animated by a retaliatory motive.

In sum, there exists a material fact as to whether Plaintiff's decision to run for re-election was a motivating factor in the Board's decision to eliminate his position. See

11

McHugh, 100 F.Supp.2d at 243.  For the same reasons, there is also a material fact as to whether the Board would have taken the same action absent Plaintiff's protected activity. Id.  Therefore, Defendant's motion for summary judgment on this claim will be denied.

**IV. CONCLUSION**

For the foregoing reasons, I will deny summary judgment on all claims.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN WAGNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRISTOL TOWNSHIP | : | No. 02-4713 |

**O R D E R**

AND NOW, this 18th day of September, 2003, upon consideration of Defendant's Motion for Summary Judgment (Document #23), and Plaintiff's Response (Document #25), IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is DENIED.

BY THE COURT:

_____
_____PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE