**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN WAGNER, | : | **CIVIL ACTION NO.: 02-cv-4713** |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| vs. | : | |
| | : | |
| BRISTOL TOWNSHIP, | : | |
| | : | |
| *Defendant*. | : | |

**JOINT PRETRIAL STIPULATION**

**I.    AGREED FACTS:**

1.    In or about 1991, Plaintiff, Kevin Wagner ("Wagner") was elected to the position of Constable for Bristol Township.

2.    Wagner was re-elected as Constable in 1997 and has served in that capacity continuously until the present time.

3.    In December of 2001, Wagner submitted an application with Defendant Bristol Township ("Defendant Township") for the position of Supervisor of the Public Works Department.

4.    After interviewing with Suzanne Newsome and Steve McClain, Wagner was offered and did accept the Supervisor position on or about January 3, 2002.

5.    In December of 2001, the Bristol Township Council ("Council") adopted a budget for the year 2002.

6.     Thereafter, on January 7, 2002, newly elected Council members were sworn in, including, Karen Lipsack ("Lipsack"), John Monahan ("Monahan"), Kenneth Worthington ("Worthington"), and Kenneth Balcom ("Balcom").

7.     William Tuthill ("Tuthill"), the remaining Council member, was a member of the Council when the original 2002 budget was approved.

8.     Immediately after being sworn in, Lipsack moved to reopen Defendant Township's budget and further moved to freeze all hiring made prior to December 31, 2001.

9.     This directly affected Wagner because his position was funded under the 2002 budget which was adopted in December of 2001.

10.    Lipsack, Monahan, and Tuthill voted in favor of Lipsack's motion, while Balcom and Worthington voted no.

11.    In or about January of 2002, Tuthill, in addition to serving as President of the Council, served as a Deputy Constable under Constable William Keyser ("Keyser").

12.    On February 1, 2002, the Council reconvened to review the 2002 budget.

13.    During the February 1, 2002 Council meeting, Mayor Fenton stated that the original 2002 budget "was a good, well-organized budget with no tax increases and followed the recommendations of the Pennsylvania Department of Community and Economic Development Report."

14.    During the February 1, 2002 Council meeting, Balcom made a motion to

approve the 2002 budget as originally adopted in December of 2001. Balcom's motion failed by a vote of 3-2 as Lipsack, Monahan, and Tuthill all voted against said motion.

15.     During the February 1, 2002 Council meeting, Lipsack moved to eliminate funding for Wagner's Superintendent position. Lipsack's motion was approved by a vote of 3-2; again, Lipsack, Monahan, and Tuthill all voted in favor of said motion.

16.     At the close of the February 1, 2002 Council meeting, Lipsack's motion to advertise and place the amended budget on public display was approved by a vote of 3-2 and was supported by Lipsack, Monahan, and Tuthill.

17.     During the February 15, 2002 Council meeting, Lipsack moved to adopt the 2002 budget amendments, which included the removal of funding for Wagner's Supervisor position. Lipsack, Monahan, and Tuthill voted in favor of adopting the amendments, while Balcom voted against approval of the amendments.

18.     In addition to removing funding for Wagner's Supervisor position, the new budget removed funding for the position of Police Liasion, then held by retired police officer Joseph Fehn ("Fehn").

19.     On February 19, 2002, Mayor Fenton vetoed the newly approved budget, which effectively returned the budget to its original form as of December of 2001.

20.     The funding for Fehn's position was reinstated, thereby leaving Wagner as the only employee affected by the new budget. Nevertheless, Wagner's position was never funded and he was in effect removed as Supervisor.

-3-

II.    **DISPUTED FACTS:**

A.    **Plaintiff's Disputed Facts:**

1.    Prior to the January 7, 2002 meeting, Lipsack discussed her motion to reopen the budget and her motion to suspend all recent hiring decisions with both Monahan and Tuthill.

2.    The Township Council was divided into two separate political factions of the local democratic party. Those who supported Constable William Keyser included Lipsack, Monahan, and Tuthill. Those council persons who supported Mayor Fenton included Worthington and Balcom.

3.    Council members typically align their voting based upon their membership in the aforesaid political factions.

4.    Tuthill believed that Wagner would not support the re-election of Constable Keyser, and in the event that Keyser was not re-elected, Tuthill would lose his position as Deputy Constable.

5.    In January of 2002, shortly after Wagner assumed the position of Supervisor, Mayor Fenton met with Wagner and informed him that Tuthill had unlawfully threatened to eliminate budget funding for Wagner's Supervisor position unless Wagner agreed not to seek re-election as a Constable.

6.    During said conversation with Mayor Fenton, Wagner told Fenton that he would not accede to Tuthill's unlawful threats and that he would not resign as Constable.

7.     Immediately following the February 1, 2002 Council meeting,  Tuthill approached Donald Lorady ("Lorady") and John Cronon ("Cronon") and told them that if Wagner resigned his Constable position, he would ensure that Lorady would replace Wagner as Constable.

8.     On February 1, 2002, Tuthill told Wagner in the presence of  Cronon, Joseph Pollio ("Pollio"), and Ronald Jamieson ("Jamieson"), that he intended to eliminate the funding for Wagner's Supervisor position unless he resigned as Constable.

9.     Tuthill further informed Wagner that Lipsack and Monahan agreed to vote in favor of eliminating Wagner's Supervisor position from the Township's budget.  Once again, Wagner refused to accede to Tuthill's illegal demands that he resign as Constable and not run for re-election.

B.     **Defendant's Disputed Facts**:

III.     **EXHIBITS**:

A.     **Plaintiff's Exhibits**:

P-1     Transcript of Deposition of Kevin Wagner

P-2     Transcript of Deposition of William Tuthill

P-3     Transcript of Deposition of Karen Lipsack

P-4     Transcript of Deposition of Kenneth Balcom

P-5     Transcript of Deposition of Donald Lorady

P-6     Transcript of Deposition of John Cronon

P-7     Transcript of Deposition of Ronald Jamieson

P-8     Transcript of Deposition of Joseph Pollio

P-9     Transcript of Deposition of Samuel Fenton

P-10    Minutes from January 7, 2002 Bristol Township Council Meeting

P-11    Minutes from January 11, 2002 Bristol Township Council Meeting

P-12    Minutes from February 1, 2002 Bristol Township Council Meeting

P-13    Minutes from February 15, 2002 Bristol Township Budget Meeting

P-14    Minutes from February 21, 2002 Bristol Township Council Meeting

P-15    Wagner's 2002 Federal Income Tax Returns

P-16    Transcript of Deposition of John Monahan

B.    **Defendant's Exhibits:**


IV.    **WITNESSES:**

A.    **Plaintiff's Witnesses:**

1.    Kevin Wagner, Plaintiff.

      It is anticipated that his testimony will cover those facts set forth
      In Parts I and II hereinabove which pertain to him and/or of which he

-6-

has personal knowledge.

2.    Kenneth Balcom

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to Township politics, Council practices with regard to voting; the circumstances surrounding reopening the 2002 budget; conversations with Tuthill regarding threats made to Wagner's Supervisor position and inquiries from Tuthill regarding Balcom's voting; statements by Tuthill regarding replacing Wagner as Supervisor; Tuthill's fear that Constable Keyser would lose the election to Wagner and that Tuthill would in turn lose his Deputy Constable position; and conversations with Tuthill wherein he stated that Balcom and Worthington were outnumbered in the Council vote to eliminate funding for Wagner's Supervisor position.

3.    Donald Lorady

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to Township politics; Council meetings wherein the 2002 budget was discussed; and conversations with Tuthill wherein Tuthill stated that if Wagner resigned as Constable, he would ensure that Lorady became a Constable.

4.    John Cronon

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to Township politics; conversations wherein Tuthill threatened to remove budgetary funding for Wagner's Supervisor position unless he resigned as Constable and agreed not to run for re-election; Tuthill's statement that Lipsack and Monahan would vote in alignment with Tuthill on this issue.

5.    Joseph Pollio

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to Township politics and Tuthill's statement to Wagner wherein he demanded that Wagner resign as Constable and agree not to run for re-election.

6.    Kenneth Worthington

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to Township politics; Council practices with regard to voting; the circumstances surrounding reopening the 2002 budget; and conversations with Tuthill about eliminating budgetary funding for Wagner's Supervisor position.

7.    Anna Rogers

It is anticipated that her testimony will cover those contested facts set forth hereinabove which pertain to her and/or which she has personal knowledge.  In addition, her testimony may relate to Township politics and conversations with District Justice Wagner regarding the elimination of funding for Wagner's Supervisor position.

8.    William Tuthill (as of cross-examination)

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to Township politics, Council meetings wherein the 2002 budget was discussed; his votes regarding the 2002 budget; conversations with regarding the elimination of funding for Wagner's Supervisor position; the Township's budget surplus for 2002; the Commission study conducted by the Pennsylvania Department of Community and Economic Development; the Mayor's ability to veto a budget; statements that he would eliminate budgetary funding for Wagner's Supervisor position unless Wagner resigned as Constable and agreed not to run for re-election; conversations with Newsome regarding

Wagner's Supervisor position; and his knowledge of the Township's Home Rule Charter.

9.    Samuel Fenton (as of cross-examination)

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to Township politics; the circumstances surrounding the elimination of funding for Wagner's Supervisor position; conversations with Tuthill wherein he stated that unless Wagner resigned as Constable and agreed not to run for re-election, he would ensure that the Council voted to eliminate funding for Wagner's Supervisor position; the Mayor's power to veto a budget; the reopening of the 2002 budget; Council meetings where to 2002 budget was discussed; the report of the Pennsylvania Department of Community and Economic Development; and discussions with Wagner regarding Tuthill's plan to eliminate funding for his Supervisor position.

10.    Karen Lipsack (as of cross-examination)

It is anticipated that her testimony will cover those contested facts set forth hereinabove which pertain to her and/or which she has personal knowledge.  In addition, her testimony may relate to Township politics; Council meetings wherein the 2002 budget was discussed; her votes regarding the 2002 budget; conversations with Tuthill and Monahan regarding the elimination of funding for Wagner's Supervisor position; her husband's political aspirations; the Township's budget surplus for 2002; the Commission study conducted by the Pennsylvania Department of Community and Economic Development; the Mayor's ability to veto a budget; statements made by Tuthill that he would eliminate budgetary funding for Wagner's Supervisor position unless Wagner resigned as Constable and agreed not to run for re-election.

11.    John Monahan (as of cross-examination)

It is anticipated that his testimony will cover those contested facts set forth hereinabove which pertain to him and/or which he has personal knowledge.  In addition, his testimony may relate to

Township politics; Council meetings wherein the 2002 budget was discussed; his votes regarding the 2002 budget; and conversations with Tuthill and Lipsack regarding the elimination of funding for Wagner's Supervisor position.

**B.**    **Defendant's Witnesses:**

**V.**    **UNUSUAL ISSUES:**

**VII.**    **MOTIONS IN LIMINE:**

**A.**    **Plaintiff:**

Plaintiff does not intend to file any motions in limine.

**B.**    **Defendant:**

Respectfully submitted,                          Respectfully submitted,

SIDNEY L. GOLD & ASSOCIATES, P.C.              MARSHALL, DENNEHEY, WARNER,
                                               COLEMAN & GOGGIN, P.C.

_____              _____
SIDNEY L. GOLD, ESQUIRE                        THOMAS C. DELORENZO, ESQUIRE
Identification No.: 21374                       Identification No.:
Suite 515, 1835 Market Street                  1845 Walnut Street - 19th Floor
Philadelphia, PA 19103                         Philadelphia, PA 19103
(215) 569-1999                                 (215) 575-2741
**Attorney for Plaintiff**                     **Attorney for Defendants**

-10-